[Civ. No. 7461. First Appellate District, Division Two.—January 28, 1931.]

E. FIRPO, Appellant, v. FREDERICK J. PIPER et al., Defendants; J. W. WOODRUFF, Respondent.

Raymond Perry for Appellant.

Arthur W. Bolton for Respondent.

LUCAS, J., *pro tem.*—Appellant, as the assignee of Lockwood-Shackelford Company, a corporation, brought suit to

recover the value of advertising services alleged to have been rendered defendants at their special instance and request and for which it is alleged defendants promised and agreed to pay the sum of $3,311.93. The defendants Green Manufacturing Company, a copartnership, F. J. Piper, Charles E. Smock, copartners, and Dale H. Poole, guarantor, defaulted and judgment was entered against them. The respondent, J. W. Woodruff, one of the original copartners in Green Manufacturing Company, appeared and contested the action. In addition to filing a general denial he pleaded two separate and special defenses, namely, that the indebtedness sued upon was incurred by defendants Piper, Smock and Poole as individuals and as directors or officers of Redusoll, Inc., the corporate successor to the assets and business of Green Manufacturing Company; and that it had already been judicially determined in the United States District Court, in the matter of Green Manufacturing Company, a bankrupt, that respondent was not liable for the amount sued for herein.

At the conclusion of the trial the court found that the advertising services were not rendered to respondent at his instance and request, and that he did not promise and agree to pay therefor, but, on the contrary, that the services were performed for Redusoll, Inc. It further found that the order in the bankruptcy proceedings constituted a final determination of respondent's liability for appellant's claim. Judgment was entered accordingly.

In order to pass upon the correctness of the above findings it will be necessary to analyze with some care the evidence offered and received in the trial court.

It appears that on January 12, 1925, for the purpose of manufacturing and selling "Redusoll" and certain extracts, hair tonics and reducing creams under the name of Green Manufacturing Company, the defendants Piper and Smock and the respondent, Woodruff, signed certain articles of copartnership, whereby the said Piper agreed to employ all of his time in manufacturing said products, at a salary of $200 per month, the said Smock agreed, for a similar compensation, to employ all of his time in selling said products, and the said Woodruff agreed to lend financial aid to said business. It was specifically agreed in the articles of copartnership that no obligation was to be incurred in excess

of the sum of $250 without the written consent of all the parties thereto, and that on demand of any two parties a corporation should be formed, wherein each of the partners was to have an equal share. Thereafter the said Piper and the said Smock proceeded to manufacture and market the products of the said copartnership under the name of Green Manufacturing Company, while the said Woodruff, whom it appears was an officer in the United States navy and absent from the state of California at all times during the subsequent conduct of the business, furnished financial assistance as agreed.

Some time in July or August of 1925 the defendant Poole was called upon by defendants Smock and Piper in regard to financing the business of Green Manufacturing Company. After investigation by Poole it was agreed among the three that Poole should have a one-quarter interest in the business for financing it. No new partnership papers were drawn up, however, as Poole agreed to incorporate a new company to take over the business. Poole forthwith assumed active charge of the business, put his own money into the project, and changed the sales policy and the price of the products. Poole at no time had dealings with the respondent Woodruff. The latter testified that while he received a communication from Piper or Smock regarding Poole becoming a partner or acquiring an interest in the business, he never communicated with them about the matter, and that he had no information as to whether or not Poole ever became a partner.

On August 21, 1925, as a result of Poole's activities, articles of incorporation of Redusoll, Inc., were drawn up, signed by the said Piper, Smock and Poole, and by one Brechtel and one Brown as incorporators. The articles of incorporation were filed with the Secretary of State on August 29, 1925. On September 3, 1925, a bill of sale from Green Manufacturing Company to Redusoll, Inc., of all of Green Manufacturing Company's assets was signed by Messrs. Piper and Smock for and on behalf of the old partnership. Said bill of sale was signed and executed in triplicate. One copy was given to Poole, one was sent to respondent, and the third was kept in the office of Green Manufacturing Company. After the execution of this bill of sale all the assets of Green Manfacturing Company were

turned over to Redusoll, Inc., and defendant Poole immediately took over the full management thereof. The location of the office was changed, the name "Redusoll, Inc.," or "Redusoll, Incorporated," was placed on the office door, stationery, billheads, cartons and containers, the telephones were listed under that name, and all customers were notified of the change.

On September 11, 1925, an agreement for advertising was entered into by and between Lockwood-Shackelford Company and Green Manufacturing Company, one C. H. Beebe signing on behalf of the advertising company and defendant Piper signing on behalf of Green Manufacturing Company. By the terms of this agreement the advertiser (Green Manufacturing Company) agreed to pay Lockwood-Shackelford Company for its services a fee of 15 per cent of the total expenditures made by it on account of advertising and advertising matter, the minimum service payment thereunder being fixed at one dollar per month. Although the parties contemplated the expenditure of approximately $4,000 for an advertising campaign, no definite figures were agreed upon until after the agreement was executed.

Under date of September 11, 1925, Lockwood-Shackelford Company furnished a written estimate of the cost of certain services totaling the sum of $3,990.60. This was indorsed "Approved, Green Manufacturing Company by F. J. Piper." Three subsequent estimates in the several sums of $69.75, $404.25 and $45, were also furnished, which were respectively indorsed "Authorized, Green Manufacturing Co. by F. J. Piper; O. K. Poole"; "Approved, Green Manufacturing Company, by F. J. Piper; O. K. Poole"; and "Authorized, Green Manufacturing Company by Poole."

Respondent, Woodruff, was never consulted in reference to the execution of the original agreement, nor in reference to the approval of any of said estimates; nor was he at any time notified that his copartners intended to or did incur any indebtedness in excess of the $250 limit expressly mentioned in their articles of copartnership.

As to what actually transpired at and about the time the advertising agreement was entered into and the estimates approved there is considerable conflict.

Herbert C. Bernsten, general manager of Lockwood-Shackelford Company, testified that he was not present

when the agreement was signed and that shortly thereafter he objected to the credit situation and demanded further information. He was, according to his testimony, shown the original copartnership agreement between Piper, Smock and Woodruff and was told that respondent was a man of means and that as a partner he would be liable for the indebtedness incurred. He further testified that he secured a report as to the financial standing of respondent and of Green Manufacturing Company, but did not go forward with the advertising campaign until the defendant Poole had guaranteed the account, and until Poole's financial standing had also been investigated. He admitted, however, that at several conferences had in reference to advertising he was told that Redusoll, Inc., was being formed to take over the business of Green Manufacturing Company, but insisted that the advertising was to be done for the latter.

C. H. Beebe, another representative of Lockwood-Shackelford Company, also testified in effect that the advertising was to be done for Green Manufacturing Company as the real party in interest.

Opposed to this testimony the following evidence was introduced on behalf of the respondent, upon which he relies as support for the court's findings herein:

The defendant Piper testified that several times during the year 1925 the above mentioned C. H. Beebe called upon him and solicited advertising for Lockwood-Shackelford Company; that in June or July he told Beebe that as soon as the corporation (Redusoll, Inc.) was formed there would be a chance of advertising; that the next time Beebe called after the corporation was formed, and solicited advertising he was told that Piper had nothing more to do with that because he was only the production manager, and that Poole had been appointed as general manager of the corporation. Piper directed Beebe to see Poole about the advertising. Thereafter Beebe, Poole and Piper met by appointment, and Beebe endeavored to get an advertising contract. Poole told Beebe he was not yet ready for advertising, that the corporation had been formed and that it was his task now to raise money and sell stock, and that after that he would go ahead with the advertising and give him a contract. Piper then testified that the next time he saw Beebe, Beebe presented him with a printed form of contract to sign and

stated that Poole had sent Beebe to him for the purpose of securing his signature. Piper objected to signing the contract because Poole was in charge of affairs and because the contract was made out in the name of Green Manufacturing Company. In Beebe's presence Piper telephoned to Poole and voiced these objections and was told by Poole that he was in a hurry, that it was only a matter of form involving an obligation of but one dollar per month, and that it made no difference who signed the contract or in whose name it was made out. Thereupon Piper signed the contract.

Piper further testified that a short time thereafter a meeting occurred at the office of Lockwood-Shackelford Company whereat Messrs. Poole, Smock, Piper and Bernsten were present. Bernsten submitted the first estimate or cost of the proposed advertising campaign. The estimate was passed around and Poole said, "Piper, you had better sign this," to which Piper replied, "Why should I sign this? I am production manager; you are the general manager; and furthermore it is made out in the name of the Green Manufacturing Company." Poole replied, "It doesn't make any difference; it is just a matter of form; just sign it and it will be O. K." Thereupon Piper signed the original estimate of $3,990.60. Some of the subsequent estimates were also signed by him, as he considered them a part of the original estimate.

The following testimony was also given by Piper: "Q. Now, as I understand your testimony, what was done was between Redusoll, Inc., and the Lockwood-Shackelford Company? A. Yes, sir."

As to respondent Woodruff's name being mentioned, Piper testified that his name was not mentioned by anybody when the question of credit was discussed.

The defendant Poole gave testimony in effect as follows: That during the year 1925 both Beebe and Bernsten of Lockwood-Shackelford Company called upon him soliciting business; he told them that a new corporation was going to take over the business of Green Manufacturing Company, and that when the affairs were all arranged he would talk about an advertising contract; finally he agreed to let them handle the advertising and they submitted the advertising contract whereby Lockwood-Shackelford Company was retained as advertising agent. He further testified that the

Redusoll business was being operated under the name of the corporation although they had not yet received permission to sell stock; that Piper, Smock and Poole were in Bernsten's office when the estimates were talked over and they agreed to go through with the contract as outlined; that the estimate was handed to Poole to sign, but being made out in the name of Green Manufacturing Company, Poole told Piper to sign it, saying it made no difference; that a day or two later Bernsten telephoned and said he would like to have another meeting; that the same parties again met, and Bernsten said he was not satisfied with the financial setup and did not want to go ahead with the advertising unless Poole personally guaranteed the account. Poole thereupon signed the written guarantee.

Poole testified also that while the advertising matter was being prepared practically all of the business was being taken care of by him and that he called at Lockwood-Shackelford Company's office nearly every day.

The following question and answer appear in the record: "Q. Practically all of this advertising agreement, so far as any conferences were concerned, was conducted by you for the Redusoll Company with the representatives of the Lockwood-Shackelford Company? A. Yes." The witness also testified that he did not recall respondent Woodruff's name having been mentioned during any of the interviews or conversations with the representatives of the Lockwood-Shackelford Company; that Woodruff was not in California at the time, had nothing to do with the business, and was neither an incorporator, officer, director nor stockholder of Redusoll, Inc.

It further appears from the record that the advertisements put out by Lockwood-Shackelford Company in accordance with the terms of their agreement bore the name of "Redusoll, Inc." rather than that of Green Manufacturing Company, and that the portfolio prepared by Lockwood-Shackelford Company and containing the proposed advertisements compiled for salesmen to show distributors represented to the trade that the goods were manufactured and sold by Redusoll, Inc. The portfolio also contained a copy of a letter written by the "San Francisco Examiner" stating that they had received from Lockwood-Shackelford Company an advertising contract for over 7,000 lines of adver-

tising for Redusoll, Inc., manufacturers of Redusoll reducing cream.

Regarding this letter Mr. Beebe testified as follows: "That statement is absolutely correct. They had received that contract. They had received it as far as the advertising signature was concerned for Redusoll, Incorporated. Mr. Poole and I went to the San Francisco Examiner on several occasions. Q. Who told the San Francisco Examiner that the Lockwood-Shackelford Company had a contract for advertising for Redusoll, Incorporate; was that you, or some other member of the firm? A. They got their authorized space orders. Q. Who gave them that? A. The space department of the Lockwood-Shackelford Company.''

 Upon the foregoing evidence and other evidence which it will not be necessary to detail the trial court found, "that prior to the month of September, 1925, said partnership (that of Piper, Smock & Woodruff) was dissolved''; "that at the time said advertising was done and said services were rendered defendant (respondent) J. W. Woodruff was not a partner of Green Manufacturing Company''; and "that it is not true as alleged in plaintiff's complaint that Lockwood-Shackelford Company, a corporation, rendered to defendant (respondent) J. W. Woodruff at his instance and request the advertising or advertising services referred to and described in said complaint''.

We believe the testimony above set forth and referred to is sufficient to support these findings.

The giving to Poole of an interest in the business and placing him in full charge of the management thereof contrary to the terms of the partnership agreement, whereby Piper and Smock were to devote their entire time to the business, the formation of Redusoll, Inc., the transfer to it of the business and assets of the copartnership and the incurring of indebtedness in excess of the limited amount, all effectuated a dissolution of the original partnership.

"A partnership can be formed only by the consent of all the parties thereto, and therefore no new member can be admitted into a partnership without the consent of every existing member thereof." (Civ. Code, sec. 2397.)

"A general partnership is dissolved as to all the partners. . . . 4. By the transfer to a person, not a partner, of the interest of any partner in the partnership property."

(Civ. Code, sec. 2450, as it existed in 1925. See, also, 20 R. C. L. 954, and *Moropoulos* v. *Fuller Co.*, 186 Cal. 679 [200 Pac. 601].)

█ If as herein held, respondent was not in fact a member of the Green Manufacturing Company at the time the advertising indebtedness was incurred, Lockwood-Shackelford Company would have no right to look to him for payment of its claim unless it knew he was a member of the original partnership and had no knowledge of its dissolution nor of facts sufficient to place it on inquiry. The evidence, however, although conflicting is sufficient to justify the conclusion that Lockwood-Shackelford Company did not know of respondent's former connection with the partnership, and that even if it did have such knowledge it also had knowledge of the partnership dissolution and that it was dealing with Redusoll, Inc., and its incorporators as the real parties in interest.

Having held with the trial court that the original partnership of Green Manufacturing Company had been dissolved prior to the date of the advertising agreement with appellant's assignor and that the services of Lockwood-Shackelford Company were not performed for respondent nor for any partnership of which he was a member and that he did not promise and agree to pay therefor, we deem it unnecessary to discuss the additional defense of *res judicata*.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.